CITY OF ELYRIA, Appellee,

v.

HEBEBRAND, Appellant.

[Cite as *Elyria v. Hebebrand* (1993), 85 Ohio App.3d 141.]

Court of Appeal of Ohio,
Lorain County.

No. 92CA005329.

Decided Jan. 20, 1993.

*Terry Shilling,* Elyria City Prosecutor, for appellee.

*John S. Haynes,* for appellant.

CACIOPPO, Judge.

Ralph T. Hebebrand appeals his conviction for driving under the influence and failure to keep an assured clear distance.

### Assignment of Error III

"The court improperly allowed testimony as to the pre-arrest breath tests administered by Trooper Cross over the objection of the defendant."

In his third assignment of error, Hebebrand argues that the trial court erred by allowing Trooper Ronald Cross to testify about Hebebrand's performance on a pre-arrest breathalyzer test ("PBT"). We agree.

██  To determine the admissibility of a PBT, this court looks to Ohio's drunk driving statute. It provides in part that:

"(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:

"(1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse;

"(2) The person has a concentration of ten-hundredths of one per cent or more by weight of alcohol in his blood;

"(3) The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath;

"(4) The person has a concentration of fourteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his urine." R.C. 4511.19(A).

Hebebrand was charged with violating Elyria Municipal Ordinance 333.01(A). This ordinance repeats verbatim R.C. 4511.19(A)(1), Ohio's "general" driving under the influence law.

Also, the Ohio Administrative Code supplements R.C. 4511.19(A), and provides in pertinent part:

"(D) The breath testing instruments listed in this paragraph are approved as nonevidential preliminary breath testing instruments. These instruments are not approved for use in determining whether an individual's breath contains a concentration of alcohol prohibited or defined by division (A)(3) of section 4511.19, division (A)(4) of section 1547.11, division (B) of section 2903.06, division (B) of section 2903.07 of the Revised Code, and any other statute or local ordinance prescribing a defined or prohibited breath-alcohol concentration. The approved preliminary breath testing instruments are:

"(1) 'Alco–Sensor' (two-digit display model); and

"(2) 'Alco–Sensor' (pass, warn, fail light display model)." Ohio Adm.Code 3701–53–02(D).

While Cross did not testify to the exact name of the PBT he used, he did describe an "Alco–Sensor" device with a pass, warn, and fail light, a device

specifically listed in Ohio Adm.Code 3701–53–02(D). The Ohio Adm.Code is inconsistent; it describes various PBTs as "non-evidential," but then seems to bar their use only when a defendant is charged with having a prescribed breath-alcohol content. This inconsistency should be resolved in favor of a defendant. A court should not admit into evidence results derived from PBTs listed in Ohio Adm.Code 3701–53–02(D) when a defendant is charged with Ohio's general driving under the influence provision, R.C. 4511.19(A)(1).

In the event we find the admittance of the PBT results error, the prosecution asks us to hold that error harmless. In order to hold an evidential error harmless, the court must be able to declare beyond a reasonable doubt that the error was harmless. *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035, paragraph seven of the syllabus. If there is a reasonable possibility that improperly admitted evidence leads to a conviction, we must reverse it. *Id.* Although the prosecution presented other evidence to show that Hebebrand was under the influence, we cannot rule with certainty that a jury would have convicted Hebebrand on this evidence alone.

Accordingly, appellant's third assignment of error is well taken.

### Assignments of Error I and II

"I. Appellant was convicted with evidence insufficient as a matter of law, thereby denying him his due process rights guaranteed him by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution and that with respect to the assured clear distance charge, the defendant's request for Rule 29 motion was improperly denied by the court.

"II. The verdict was against the manifest weight of the evidence."

Given our disposition of appellant's third assignment of error, we consider appellant's first and second assignments of error with respect to appellant's conviction for failure to keep an assured clear distance. By asserting that the jury's verdict lacks the support of sufficient evidence, Hebebrand raises a question of law. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218, 485 N.E.2d 717, 720. He asks this court to review the evidence presented in the case in a light most favorable to the prosecution, and to determine whether any rational trier of fact could have found beyond a reasonable doubt that he committed each element of the offense. *State v. Waddy* (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819, 825. Hebebrand also argues that the trial court wrongly denied his Crim.R. 29(A) motion to acquit. Crim.R. 29(A) requires the trial court to grant an acquittal at the close of the evidence if the evidence is insufficient to support a conviction. *State v. Sailors* (Oct. 7, 1992), Wayne App. No. 2723, unreported, at 8, 1992 WL 281378. An entry denying a motion for an acquittal is

proper if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. *State v. Wolfe* (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689, 690, citing *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus. As with appellant's sufficiency of the evidence claim, Crim.R. 29 requires the court to review the evidence in a light most favorable to the prosecution.

■ At trial, Glenda Thames testified that on June 20, 1991, she drove west on 57th Street in Elyria, Ohio, toward Furnace Avenue. Fifty-seventh Street has four lanes and a passing lane. Thames drove in the inner lane. As she approached the intersection of 57th Street and Furnace Avenue, she checked her rearview mirror and determined that she could move into the turn lane. While moving into the turn lane, she noticed Hebebrand's truck rapidly approaching. The truck struck Thames' car, and Thames' car struck the vehicle in front of her.

In addition to Thames' testimony, the jury heard the testimony of Patrolman Halvorsen. Halvorsen interviewed the accident victims and witnesses. While Halvorsen reported that Thames' lane changing contributed to the accident, he cited only Hebebrand.

Given these facts, we find that the prosecution presented ample evidence to allow the court to send the case to the jury. Moreover, we find that as a matter of law, sufficient evidence existed supporting Hebebrand's conviction for failure to keep an assured clear distance.

In determining whether a jury's verdict goes against the manifest weight of the evidence:

" * * * an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717, paragraph three of the syllabus; *State v. Allen* (Aug. 27, 1986), Lorain App. Nos. 4019 and 4020, unreported [1986 WL 9355]. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Id.*" *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010.

At trial, Hebebrand claimed that Thames caused the accident by unexpectedly pulling in front of him. The evidence presented in Hebebrand's defense contradicts much of the evidence presented by the city. In such a situation, it is the province of the jury, as the trier of fact, to determine the credibility of the witnesses. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d

212, paragraph one of the syllabus. After reviewing the entire record, we find that the jury did not lose its way to create a manifest miscarriage of justice; the verdict is not against the manifest weight of the evidence.

Appellant's first and second assignments of error are overruled.

The judgment of the trial court is affirmed in part, reversed in part, and remanded to the trial court for a new trial on the driving under the influence charge.

*Judgment accordingly.*

REECE, J., concurs in part and dissents in part.

QUILLIN, P.J., dissents.

REECE, Judge, concurring and dissenting.

I concur in the court's resolution of appellant's first and second assignments of error as to the assured clear distance charge, but dissent from the court's resolution of appellant's third assignment of error. I read Ohio Adm.Code 3701–53–02(D) to prohibit the use of PBT results *only* when a defendant is charged with a violation of a state statute or local ordinance proscribing a defined or prohibited breath-alcohol concentration. In this case, appellant was tried under Elyria's ordinance prohibiting driving under the influence, which does not set out a defined breath-alcohol concentration. Therefore, I would find the testimony about the PBT admissible. Further, I would find the admission of such evidence harmless error given the facts of this case. I would affirm appellant's conviction for driving under the influence.

QUILLIN, Presiding Judge, dissenting.

I believe it was new trial error to admit the testimony concerning the results of the preliminary breath-testing instrument. This instrument is approved only for a "nonevidential" test.

Hebebrand was charged with operating a motor vehicle while under the influence of alcohol. State Patrolman Cross testified:

"Q. And you asked Mr. Hebebrand to take this test?

"A. Yes.

"Q. And did he take this test?

"A. Yes, he did.

"Q. Now, you said there were three lights on this test?

"A. Yes.

"Q. What color were the lights?

"A. Green, a yellow or amber and a red.

"Q. What's the green signify to you?

"A. The green to me would mean that he has had nothing to drink or very little.

"Q. What does the yellow signify to you?

"A. I would state to who[m]ever was just given the test that this is a warning light.

"Q. And what does the red signify to you?

"A. That this person has probably had too much to drink.

" * * *

"Q. Do you know if the red light signifies that someone had too much to drink?

"A. A red light would signify that someone has consumed too much alcohol to operate a motor vehicle.

" * * *

"Q. What was the results—what color light came on?

"A. After the gentleman blew into the PRT [*sic*] * * * it did go to red * * *."

There is absolutely no authority for allowing the results of this "nonevidential" test to go to a jury on a charge of operating a motor vehicle while under the influence of alcohol or any other charge.

I would sustain Assignment of Error III and order a new trial on both charges.