[Cite as *State v. Scott*, 2021-Ohio-156.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2020 CA 00015 |
| BRANDON C. SCOTT | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:          Criminal appeal from the Fairfield Municipal
                                                              Court, Case No. 18 TRC 8396

JUDGMENT:                                        Affirmed

DATE OF JUDGMENT ENTRY:          January 21, 2021

APPEARANCES:

For Plaintiff-Appellee                        For Defendant-Appellant

DAVID R. KLEMP                              SCOTT P. WOOD
Lancaster City Prosecutor's Office       120 East Main Street, Suite 200
239 West Main Street, Ste 101           Lancaster, OH 43130
Lancaster, OH 43130

*Gwin, P.J.*

{¶1} Appellant Brandon C. Scott appeals from the February 25, 2020 judgment entry of the Fairfield Municipal Court. Appellee is the State of Ohio.

*Facts & Procedural History*

{¶2} On August 20, 2018, appellant was charged with operating a vehicle while intoxicated, OVI refusal, and speeding, as the result of a traffic stop on August 18, 2018. On August 28, 2018, the trial court granted appellee's motion to amend the OVI refusal from a violation of R.C. 4511.19(A)(2)(A)(B) to a violation of R.C. 4511.19(A)(2). Also, on August 28, 2018, appellant pled not guilty to the charges.

{¶3} A jury trial was held on April 2, 2019 with regards to the OVI and refusal to submit to a test with a prior OVI conviction charges. Simultaneously, a bench trial was conducted on the speeding violation.

{¶4} Sergeant Timothy Bullock ("Bullock") of the Ohio State Highway Patrol was working on the night of August 18, 2018. At 1:00 a.m., Bullock was on patrol in Pickerington when he observed appellant's vehicle travelling towards his vehicle on Tussing Road at a high rate of speed. Bullock activated his in-car radar and clocked appellant's vehicle at 62 miles per hour in a 35 miles per hour zone as he was passing through a traffic light intersection. Bullock activated his lights and siren to initiate a traffic stop. Appellant continued eastbound on Tussing Road and made a very abrupt right turn onto Winderly Lane into a strip mall area.

{¶5} Bullock identified Exhibit A(1) as the cruiser video from appellant's traffic stop. He identified Exhibit B as the National Highway Transportation Safety Administration ("NHTSA") Field DWI Detection and Standardized Field Sobriety Testing

manual.    Bullock initially made contact with appellant and noted several signs of impairment.  Appellant only had his car window down five or six inches.  Appellant told Bullock he was going to his sister's house in Reynoldsburg; however, appellant was driving away from Reynoldsburg.  Bullock testified that appellant would start to speak, but then would stop and resort to nods and shaking his head when Bullock asked him questions.  Bullock noticed a strong odor of alcohol on appellant's breath.  Appellant had bloodshot and glassy eyes.  When he spoke, appellant's speech patterns were broken and he slurred the word "Pickerington."

{¶6}    When Bullock asked appellant if he had anything to drink, appellant hesitated, and said he had not consumed any alcohol.  Bullock asked appellant to step out of the vehicle so that Bullock could administer field sobriety tests. Bullock first conducted the horizonal gaze nystagmus test.  When Bullock inquired if appellant was on any medication, appellant told him he had taken Percocet earlier in the day, and that he had a prescription for it.  Appellant exhibited six out of six clues on the HGN test.  Bullock stated four clues is a reliable indicator of impairment.  Bullock conducted a vertical gaze nystagmus test, and noted vertical gaze nystagmus was present.

{¶7}    When Bullock conducted the walk-and-turn test, there were no debris on the road, and the asphalt was flat and dry.  Appellant told Bullock he had a prior surgery on his leg that caused him some pain.  Bullock testified that when he administers the field sobriety tests, he is looking for both the person's physical ability to complete the test and their ability to mentally comprehend the situation and follow instructions, so he went ahead and completed the walk-and-turn test.  Appellant exhibited six out of eight clues on the walk-and-turn test.  Bullock considered this to be a poor performance on the test,

even taking into account appellant's leg injury. Bullock administered the one-leg stand test, and appellant exhibited three out of four clues on the test. While Bullock was conducting the tests, he continued to notice a strong odor of alcohol from appellant's breath. Bullock testified that, based upon the totality of the circumstances, he believed appellant was impaired at the time he was operating his vehicle.

{¶8} Bullock placed appellant under arrest for OVI. During their conversation on the way to the Lancaster Highway Patrol Post for a chemical test, Bullock felt appellant was at points very accusatory and agitated, but at other points was apologetic. Bullock asked appellant about a BMW key fob on his key ring and appellant indicated he believed Bullock was accusing him of stealing a vehicle. Bullock stated he believed appellant was having mood swings, or having trouble recalling where the conversation had progressed to at points. Bullock identified Exhibit A(2) as the video from the camera in the backseat of the cruiser.

{¶9} Upon arriving at the post where the chemical test was located, appellant contacted his attorney and refused the chemical test. Bullock wrote appellant a citation and allowed appellant to call a family member to pick him up. Bullock identified Exhibit D as a certified copy of a 2011 Franklin County Municipal Court case in which appellant was found guilty of OVI.

{¶10} On cross-examination, Bullock confirmed appellant had no trouble finding and handing him his license, and did not stumble when he exited the vehicle. Bullock admitted that, during the HGN test, he went approximately two seconds faster than requested in the manual. Additionally, he did not hold appellant's gaze for four full seconds on the VGN test. Bullock testified that, even if he did not follow the NHSTA

guidelines exactly, he would still indicate the clues were present, because he performed the tests to the best of his ability and was in substantial compliance with the NHSTA guidelines. While Bullock confirmed he was not in strict compliance with the NHSTA guidelines on the HGN and VGN tests, he does not believe the speed at which he went on either test would invalidate the results.

{¶11} After deliberation, the jury returned guilty verdicts on the two OVI charges. The trial court found appellant guilty on the speeding charge.

{¶12} The trial court set a sentencing hearing for April 25, 2019. At appellant's request, the trial court continued the hearing to May 10, 2019. Appellant failed to appear at the May 10th hearing. The trial court issued a warrant for appellant's arrest. Appellant was arrested on January 21, 2020.

{¶13} The trial court held a sentencing hearing on February 25, 2020. For purposes of sentencing, the OVI charges merged as allied offenses of similar import. Appellee elected to proceed on the OVI under R.C. 4511.19(A)(1)(a). The trial court issued a final judgment entry on February 25, 2020, merging the OVI refusal charge with the OVI charge and sentencing appellant to a fine of $525, costs, a three-year license suspension, and 180 days in jail, with 140 days suspended on the condition of three years of probation. Additionally, the trial court credited appellant with thirty-seven days in jail.

{¶14} Appellant appeals the February 25, 2020 judgment entry of the Fairfield Municipal Court and assigns the following as error:

{¶15} "I. THERE WAS INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF ALCOHOL AND THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶16} Appellant contends his conviction was against the manifest weight and sufficiency of the evidence.

{¶17} The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), in which the Ohio Supreme Court held, "an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶18} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror", and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.2d 541, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶19} It is well-established, though, that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95

Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216.  The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility.  *Id.*

{¶20}  Appellant was charged with operating a vehicle under the influence of alcohol pursuant to R.C. 4511.19(A)(1)(a) which provides, "no person shall operate any vehicle * * * if, at the time of the operation, * * * the person is under the influence of alcohol * * *."

{¶21}  Appellant was further charged with refusing a chemical test and prior conviction within the past 20 years pursuant to R.C. 4511.19(A)(2)(a) which required the state to prove appellant was operating under the influence in the present matter, refused a chemical test, and further establish he had a prior OVI conviction within the past 20 years.

{¶22}  Appellant specifically argues his conviction is against the manifest weight and sufficiency of the evidence because:  he was stopped only for excessive speed and there were no other traffic violations; he had no trouble stopping his vehicle; he had no difficulty handing his documents to Bullock; he had no difficultly exiting the vehicle; he had no difficulty walking; Bullock testified he was coherent, responsive, and able to engage in appropriate conversation; and he only refused to submit to the chemical test after he perceived an insult from Bullock and after consulting with legal counsel.

{¶23}  Even though appellant correctly cites to several portions of Bullock's testimony in his argument, Bullock also testified to multiple other reasons why he, based upon the totality of the circumstances, believes appellant was impaired at the time he was operating the vehicle.  These include:  appellant was travelling at a high rate of speed; appellant initially put his car window down only a few inches; appellant would start to

answer questions and then would stop talking and resort to nodding; there was a strong odor of alcohol on appellant's breath both when he was in the vehicle and when Bullock was administering the field sobriety tests outside of the vehicle; appellant had bloodshot and glassy eyes; appellant's speech patterns were broken and he occasionally slurred words; appellant said he was going to Reynoldsburg, but he was going the wrong direction; once in Bullock's car, appellant had mood swings or trouble recalling the conversation; appellant exhibited six out of six clues on the HGN test; Bullock observed vertical gaze nystagmus; appellant exhibited six out of eight clues on the walk-and-turn test; and appellant exhibited three out of four clues on the one-leg stand test.

{¶24} Appellant's arguments go to the credibility of the witness and the weight of the evidence, which are questions for the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-767 N.E.2d 216. Moreover, the testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504.

{¶25} In this case, the jury heard the witness and viewed the evidence. The jury credited the uncontroverted testimony of Bullock, who was trained and experienced in detection of an OVI. The jury was able to observe Bullock under cross-examination. We note Bullock's testimony is also cooborated by the videotape which permitted the jury to observe appellant's demeanor for themselves.

{¶26} Additionally, appellant contends his conviction is against the manifest weight and sufficiency of the evidence because Bullock admitted he did not complete the field sobriety tests as required by the NHTSA and that appellant's physical injuries and

limitations from a previous motorcycle accident caused him pain on the walk-and-turn and one-leg stand tests.

{¶27} However, as this court has repeatedly held, the standard for admissibility for field performance tests is substantial, not strict, compliance. *State v. Lominack*, 5th Dist. Stark No. 2012CA00213, 2013-Ohio-2678; *State v. Vales*, 5th Dist. Stark No. 2019CA00061, 2020-Ohio-245. This is in accordance with R.C. 4511.19(D)(4), which provides field sobriety tests are admissible if the state shows, by clear and convincing evidence, the officer administered the test in "substantial compliance" with testing standards.

{¶28} In this case, Bullock explained how he performed each test, and appellee introduced the applicable portions of the NHTSA manual. Upon cross-examination, though Bullock stated he may have been a couple seconds short on the HGN and VGN tests, he testified he was in substantial compliance with the NHTSA guidelines and does not believe the speed at which he went on either test would invalidate the results. As this Court has stated, "the timing required to complete the various elements with respect to both eyes of the HGN test as set forth in the NHTSA manual are approximate." *State v. Lominack*, 5th Dist. Stark No. 2012CA00213, 2013-Ohio-2678; *State v. Ricer*, 5th Dist. Ashland No. 17-COA-023, 2018-Ohio-426.

{¶29} Additionally, Bullock testified he took appellant's leg injury into account when evaluating the tests and indicated the tests are as much mental as they are physical, and he was looking at appellant's ability to mentally comprehend the situation and follow instructions. Further, Bullock stated that, prior to the test, appellant had no issues with mobility and only showed physical inabilities during the tests themselves.

{¶30}  Further, there was ample evidence beyond the field sobriety tests to support a conviction at trial for OVI.  "It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated." *Columbus v. Mullins*, 162 St 419, 123 N.E.2d 422 (1954); *State v. Schmidt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446 (even when the final results of a field sobriety test are excluded because they were not administered in substantial compliance, an officer may testify as a lay witness about the officer's observation of the defendant's performance); *State v. Ricer*, 5th Dist. Ashland No. 17-COA-023, 2018-Ohio-426.

{¶31}  Bullock testified he observed appellant travelling at an excessive speed. When Bullock approached appellant, appellant would only open his window approximately five or six inches.  Appellant started to answer Bullock's questions, but would then stop and nod.  His speech patterns were broken and he occasionally slurred his words.  Appellant told Bullock he was going to Reynoldsburg; however, appellant was headed away from Reynoldsburg.  Bullock noticed appellant exhibited bloodshot and glassy eyes, and smelled strongly of alcohol both when he was in the car and when he was standing outside of the car.  Appellant was unable to follow instructions for some of the field sobriety tests.  Upon appellant's arrest and throughout his transportation to the highway patrol post, Bullock testified appellant had either mood swings or trouble recalling where they were in conversations.

{¶32}  Accordingly, even without the field sobriety tests, appellee presented sufficient evidence to support appellant's conviction for driving under the influence. Further, appellee produced sufficient evidence of OVI refusal with a prior conviction. Sufficient evidence was presented to support appellant's conviction for OVI in this case,

and Bullock testified appellant refused a chemical test. The state further presented a certified copy of appellant's prior OVI conviction from 2011.

{¶33} Upon our review of the record, including the videotape, we find appellant's convictions are not against the manifest weight of the evidence. The jury heard the witness, viewed the evidence, and heard the arguments of counsel. The jury, as the trier of fact, was in the best position to weigh the evidence of whether appellant operated the vehicle while under the influence of alcohol. Any rational trier of fact could have found the essential elements of OVI beyond a reasonable doubt. Nor is this the exceptional case in which the evidence weighs heavily against a conviction. The jury neither lost it way nor created a miscarriage of justice.

{¶34} Based on the foregoing and the entire record in this matter, we find appellant's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witness, evaluated the evidence, and was convinced of appellant's guilt. Appellant's assignment of error is overruled.

{¶35} The February 25, 2020 judgment entry of the Fairfield Municipal Court is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, Earle, J, concur